UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEXIS TURESKIS,

        Plaintiff,

v.                                              Case No.  8:19-cv-2263-T-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claims for Supplemental Security Income ("SSI") and period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**    **Procedural Background**

Plaintiff filed applications for SSI and a period of disability and DIB (Tr. 250-64). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 167-71).  Plaintiff then requested an administrative hearing (Tr. 177).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 28-59). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claims for benefits (Tr. 16-24).  Then Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-3).  Plaintiff

then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff was born on November 15, 1991 and was 26 years old on her administrative hearing date (24 on her alleged onset date) (Tr. 34). Plaintiff claimed disability beginning May 30, 2016 due to right upper extremity paralysis (Plaintiff's right arm has been paralyzed since birth), rheumatoid arthritis in both knees, depression, anxiety, and migraine headaches (Tr. 35). She graduated high school and earned some college credits (Tr. 34). Her past work experience includes work as a customer service representative at a car dealership in Ft. Walton Beach, Florida, and at an Amazon distribution center in North Dakota (Tr. 36-41).

In rendering his December 7, 2018 administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021 (her date last insured, or "DLI," for DIB purposes) (Tr. 16). After conducting a hearing on September 17, 2018, and reviewing the evidence of record, however, the ALJ determined at step one of the sequential evaluation process (described below) that "[t]here has been no continuous 12-month period during which the claimant has not engaged in substantial gainful activity." (Tr. 19). Specifically, the ALJ found that Plaintiff engaged in substantial gainful activity ("SGA") during these periods: the first, third, and fourth quarters of 2017, and the first and second quarters of 2018 (Tr. 18).

After considering the assessment of a vocational expert ("VE"), the ALJ also rejected Plaintiff's argument that her past work activity represented trial work or

unsuccessful work attempts ("UWA"), because she was let go from her car dealership job on the Friday before her Monday hearing when another company bought out the dealership (Tr. 19). The ALJ found Plaintiff not disabled.

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the

claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by

substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.   Analysis**

Plaintiff argues the ALJ miscalculated her earnings, and she did not earn SGA-level income for any 12-month period after her May 2016 onset date; Plaintiff contends the ALJ should have proceeded past step one of the sequential evaluation process and found her disabled (Doc. 20 at 3-6). The Commissioner retorts that the ALJ's calculation of Plaintiff's average earnings is correct (*Id*. at 6-8). The ALJ's decision that Plaintiff is not disabled because she earned SGA-level income is supported by substantial evidence.

To backtrack, at the first step of the sequential evaluation process, a claimant must show she is not engaged in SGA. 20 C.F.R. §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b). SGA is defined as "work activity that is both substantial and gainful." 20 C.F.R. §§ 404.1572, 416.972. Substantial work activity involves "doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. §§ 404.1572(a), 416.972(a). Gainful work activity is work done "for pay or profit." 20 C.F.R. §§ 404.1572(b), 416.972(b).

The Commissioner relies on certain guides to determine if a claimant is engaged in SGA, including the claimant's work, how well she performed, how much time she spent at work, and whether her work was done under special conditions or in a sheltered

workshop. 20 C.F.R. §§ 404.1573, 416.973.[1] A chief consideration in determining whether prior work was SGA is a claimant's earnings. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1); *Green v. Comm'r of Soc. Sec.*, 555 F. App'x 906, 908 (11th Cir. 2014). "The ALJ ordinarily will consider that the claimant either was or was not engaged in substantial gainful activity if her average monthly earnings are above or below a certain amount established by the Social Security Administration's earnings guidelines." *Eyre v. Comm'r of Soc. Sec.*, 586 F. App'x 521, 524 (11th Cir. 2014) (citations omitted). When a claimant's income is above the SGA monthly earning threshold, a presumption arises that the claimant engaged in SGA. *See Hornung v. Saul*, No. 3:19-cv-166-MCR-HTC, 2020 WL 5260786, at *7 (N.D. Fla. Aug. 6, 2020).

Earnings are not dispositive, however. Even if a plaintiff's monthly earnings fall below the guidelines, if other evidence indicates that a plaintiff engaged in SGA, the ALJ can "consider other information, including whether the work performed was 'comparable to that of unimpaired people in [the claimant's] community who [were] doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work.'" *Eyre*, 586 F. App'x at 524 (quoting 20 C.F.R. §§ 404.1574(b)(3)(ii)(A), 416.974(b)(3)(ii)(A)).

The regulations also provide guidance on how to average a claimant's earnings: "we will average any earnings you make during the month you file for benefits and any

---

[1] Special work conditions may consist of receiving assistance from other employees, permission to take frequent rest breaks, and permission to work at a lower standard of productivity. 20 C.F.R. §§ 404.1573(c), 416.973(c). Work done under special conditions can still constitute SGA. *See* 20 C.F.R. §§ 404.1573(c), 404.1574(a)(1), (a)(3), (b)(2); 416.973(c), 416.974(a)(1), (a)(3), (b)(2).

succeeding months to determine if you are doing [SGA]." 20 C.F.R. §§ 404.1574a(a), 416.974a(a). When a person's work "was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earnings levels," earnings are averaged over the entire period of work requiring evaluation to determine SGA. 20 C.F.R. §§ 404.1574a(a), 416.974a(a). In other words, "[e]arnings are generally averaged over the actual period of time in which work was performed." SSR 83-35, 1983 WL 31257, at *1-3 (Jan. 1, 1983) (providing example of claimant with reported earnings from January to August and identifying the "actual period of work involved" as "the 8-month period from January through August," not 12 months). If the claimant's work pattern or earnings change significantly, earnings are averaged "over each separate period of work." 20 C.F.R. 404.1574a(c), 416.974a(c); *see Schlegel v. Comm'r of Soc. Sec.*, No. 6:16-cv-1236-Orl-DCI, 2017 WL 2379811, at *2 (M.D. Fla. June 1, 2017) ("A claimant's average monthly earnings while doing prior work is calculated by averaging the claimant's earnings over the actual period of work involved, not over the entire year.").

For work after January 1, 2001, earnings show SGA if they "average more than the larger of: (A) [t]he amount for the previous year, or (B) [a]n amount adjusted for national wage growth, calculated by [a set formula]." 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii). The SSA publishes the adjusted wage amounts in a chart and through the Program Operations Manual System ("POMS"). *See* https//www.ssa.gov/apps10/poms.nsf/lnx/0410505015, POMS DI 10501.015. The

monthly amount to show SGA for a non-blind claimant in 2016 was $1,130; in 2017, the amount was $1,170; and in 2018, the amount was $1,180. *Id.*

Here, at the beginning of Plaintiff's hearing, the ALJ stated: "These are the impairments that I saw from my review of the file. Rheumatoid arthritis, both knees. Right upper extremity paralysis since birth. Depression, anxiety, and migraine headaches." Tr. 35) He continued, "[a]nd, I would say I'm pretty well convinced here. So, I'm certainly leaning in the direction of a favorable decision here." (*Id.*). Then Plaintiff testified, in an exchange with her counsel,

> Q: When did you last work?
> A: Friday.
> Q: What happened?
> A: We found out that a company bought out the dealership I was working at. And, they no longer needed our services, and decided to let us go.
> Q: Okay. So, you had been working full-time, or part-time?
> A: Full-time.
> Q: And, how long were you working full-time?
> A: I had worked for 10 months.
> Q: Okay. And, so eight hours a day, five days a week?
> A: Correct.
> . . .
> Q: Okay. And, how long had you been out of work up until you got that job?
> A: Well, right before that I had found a position there was – I would say it was two days, right before that one. Just two days.

(Tr. 35-36).

Recapping her work experience, Plaintiff explained that in June 2016, the month before she filed her SSI and DIB applications, Amazon had terminated her full-time customer service job at a North Dakota distribution center, a job she had held for a year and 10 months. At Amazon, Plaintiff had trouble remembering company policies and had a written "script" in front of her to recite to callers. (Tr. 38). So she believes her poor

8

memory got her fired at Amazon: "[A]fter working there for almost two years, I didn't improve from what they had thought . . . So, I got terminated." (*Id.*).

After leaving Amazon, Plaintiff moved to Florida and worked part-time for a year at Express Employment Professionals and for two months at Elide One, again in customer service. She left those jobs because "I was not given the hours that they had promised." She worked "[a]t the very most, 32 [hours per week]," and could not make ends meet. (Tr. 41). So, she found the dealership job online and started full-time there.

Considering this testimony, the ALJ walked back his earlier comment: "[D]espite what I said before about a favorable decision . . . she's had SGA level earnings for the last several years, even though she's in some cases been fired, or lost jobs. . . . So, the SGA is going to prevent me from issuing a favorable decision." (Tr. 37). The ALJ then questioned the VE, posing a hypothetical question that included limitations related to all Plaintiff's impairments. The VE responded there is no work in the national economy for such a hypothetical individual (Tr. 52-53). The ALJ asked the VE, "[s]o, I guess what you are telling me, is that it is surprising that [Plaintiff] has been able to do all of the work she has been doing, right?" (Tr. 54). The VE replied, "that is exactly what I'm telling you. I believe this lady has persevered, and achieved beyond what we would expect . . . I think she has done extremely well to work as much as she has." (Tr. 54). The VE observed, however, that Plaintiff "has also encountered the situations where after a time period, she has issues with sustaining the work because of employer expectations." (*Id.*)

In his decision, the ALJ emphasized that Plaintiff posted earnings for each quarter following her May 2016 onset date (Tr. 17-18). More specifically, "[t]he claimant posted

9

[SGA] level earnings in the 1st quarter of 2017, [SGA] level earnings in the 3rd quarter of 2017, and [SGA] level earnings 4th quarter of 2017. The claimant also worked at [SGA] in the 1st and 2nd quarter of 2018." (Tr. 19) The ALJ then concluded there was no continuous 12-month period after her onset date during which Plaintiff had not engaged in SGA (Tr. 19).

Considering the method for averaging wages called for by 20 C.F.R. § 404.1574a(b),(c) and 416.974a(b),(c), it is not clear why the ALJ averaged Plaintiff's earnings quarterly rather than monthly. *See Fox. v. Saul*, No. 17-C-3433, 2020 WL 6894935, at * 4 (N.D. Ill. Nov. 24, 2020) (remanding case when ALJ miscalculated earnings on quarterly rather than monthly basis and claimant had impairment-related work expenses and highly accommodated work arrangement). The Commissioner does not address this. Plaintiff's earnings reports show total income of $12,380.18 in 2016; $15,776.21 in 2017; and $14,376.00 in 2018 (Tr. 270, 275-76). On this record, when averaged monthly (as Plaintiff and the regulations advise), Plaintiff's earnings for 2017 and 2018 are still above SGA levels: $1,314.75 per month in 2017 (SGA threshold is $1,170); and $2,396.00 per month for the first six months of 2018 (SGA income threshold is $1,180).

But Plaintiff's argument appears more nuanced: she advocates for averaging her income monthly, not quarterly, for the discrete period of June 2016 through July 2017, the length of her tenure at Express Employment Professionals (Doc. 20 at 5).[2] If the ALJ

---

[2] To the extent Plaintiff argues she is entitled to a closed period of disability, this argument is waived because she does not develop it. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828

10

had done this, Plaintiff maintains, he would have discovered that Plaintiff's earnings were below the SGA threshold, and he would have continued through the sequential evaluation process to find Plaintiff disabled.  Plaintiff's average monthly earnings from her May 2016 onset date through the end of 2016 were below SGA levels.[3]  Considering this, and presumably due to her job change in July 2017, Plaintiff maintains the ALJ should have averaged her monthly earnings for the first six months of 2017 separately from the rest of that year.  Parsing Plaintiff's 2017 income, she earned $6,607 in the first six months, which averages to $1,101.17 per month, below the $1,170 SGA threshold (Tr. 276-78).

Again, earnings are calculated over each separate period of work, and a separate period of work may begin when SGA levels change or when there is a "significant change" in work patterns or earnings.  *See* 20 C.F.R. §§ 404.1574a, 416.974a.  Although there is little case law interpreting the meaning of "significant change" under these regulations, *see Proffitt v. Colvin*, No. 7:15-cv-493, 2017 WL 536076, at *3 (W.D. Va. 2017) (noting dearth in case law interpreting "significant change" under regulations), cases find that when a claimant's work pattern is not continuous, the claimant's monthly earnings are determined for the period worked, rather than averaged over a calendar year.  *See Underwood v. Comm'r of Soc. Sec.*, No. 12-cv-391, 2013 WL 1748050 (M.D. Fla. Apr. 4, 2013) report and recommendation adopted, 2013 WL 1749798 (M.D. Fla. Apr. 23, 2013)

---

n.3 (11th Cir. 2006) (claimant waived the issue because he did not elaborate on his claim or cite to authority).

[3] The ALJ implicitly acknowledged this in his decision by omitting 2016 from the list of years Plaintiff engaged in SGA (*see* Tr. 18). In 2016, Plaintiff moved from North Dakota to Florida, and there is a corresponding gap in her 2016 earnings record (Tr. 272-75).

11

("Because [claimant's] work as a telemarketer was not continuous, averaging his earnings over the entire year does not accurately reflect whether his work was SGA."); *Quarelli v. Comm'r of Soc. Sec.*, No. 1:16-cv-04119-NLH, 2017 WL 4315040, at *6-7 (D. N.J. Sept. 28, 2017) (finding ALJ erred because he "did not explain why Plaintiff's earnings from the Home Depot job and the car sales job should not be averaged for three months and five months, respectively or in combination for a total of eight months, rather than combined and averaged over twelve months.").

Here, Plaintiff's work and income in 2017 involved three ventures. First, she worked part-time until July 2017 at Express Employment Professionals (Tr. 41-42). Then, from August through October 2017, she worked "at the very most, 32 [hours per week]" at Elide One (Tr. 41). Finally, from November 2017 through September 2018, she worked 40 hours per week at the car dealership (Tr. 35-36). Despite Plaintiff's job changes and hours fluctuations, she was continuously employed in 2017 and 2018 (*see* Tr. 36, Plaintiff explaining that before her job at the dealership, she was unemployed "[j]ust two days."). On this record, Plaintiff worked without "significant change" in 2017 and 2018.

Although the ALJ expressed Plaintiff's earnings by quarter, under these circumstances this was harmless error. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) (noting that when the correct application of the regulations would not contradict the ALJ's ultimate findings, an incorrect application is harmless error, and the ALJ's decision stands). Plaintiff's contentions, at most, confirm that the evidence in the record was susceptible to

12

different interpretations. However, because the ALJ's findings are reasonable and supported by substantial evidence, the Court must uphold them.

Alternatively, Plaintiff argues that even if her income was at SGA levels, her work was not SGA but instead a series of unsuccessful work attempts ("UWA").[4] A claimant can rebut the presumption that her work was SGA if she can show that her prior work was UWA. *Hornung*, 2020 WL 5260786, at *7. Work constitutes UWA if these three elements are met: (1) the work was performed for six months or less; (2) the work comes after a significant break in work; and (3) the individual either stopped working or their income fell under the SGA level because of the individual's disability. 20 C.F.R. §§ 404.1574(c), 416.974(c). In the ALJ's decision, he stated:

> [T]he claimant's representative argued that the claimant's work activity represent[ed] [UWA] or trial work periods. This argument is not persuasive. The claimant herself testified that she stopped working her last job because her company was bought out by another and she was let go. This testimony contradicts any suggestion that the claimant was not able to meet the physical and mental demands of work. There is no indication in the record that the claimant was given special accommodations to allow her to complete her work and the claimant's earnings in the 4th quarter of 2017 and in 2018 were well above [SGA] levels earnings.

(R. 19) This shows an analysis of the elements of UWA. Plaintiff has not rebutted the presumption that her work was SGA; the ALJ's decision is supported by substantial evidence.

Accordingly, it is hereby

---

[4] Plaintiff also contends she is entitled to a trial work period, but she does not develop this argument (*see* Doc. 20 at 6). The Court finds it is without merit because Plaintiff must first show entitlement to benefits. *See* 20 C.F.R. §§ 404.1592(d), 416.992(d) (entitlement to DIB is prerequisite to trial work period).

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on February 3, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE